**Richard MAY, Appellant,**

v.

**JAMES H. DREW SHOWS, INC., and Workmen's Compensation Board of Kentucky, Appellees.**

**JAMES H. DREW SHOWS, INC., Cross-Appellant,**

v.

**Richard MAY and Workmen's Compensation Board of Kentucky, Cross-Appellees.**

Court of Appeals of Kentucky.

Sept. 15, 1978.

Rehearing Denied Nov. 3, 1978.

Discretionary Review Denied Feb. 20, 1979.

John David Preston, Perry & Preston, Paintsville, for appellant and cross-appellee, Richard May.

Thomas M. Cooper, Landrum, Patterson & Dickey, Lexington, for appellee and cross-appellant, James H. Drew Shows, Inc.

Before HOWARD, VANCE and WINTERSHEIMER, JJ.

HOWARD, Judge.

This is an appeal from a judgment of the Fayette Circuit Court reversing the finding by the Workmen's Compensation Board that the claimant was *not* a seasonal worker and affirming the Board's decision to award the claimant minimum benefits for permanent partial disability as set forth in *Apache Coal Co. v. Fuller*, Ky., 541 S.W.2d 933 (1976). Whether the claimant was a seasonal worker and whether *Apache* should apply are the only two issues raised on both the appeal and cross-appeal.

The claimant, Richard May (hereinafter referred to as May), started working for James H. Drew Shows, Inc. (hereinafter referred to as Drew Shows), when the traveling carnival run by Drew Shows came to his home town of Louisa, Kentucky on July 4, 1974. May worked at the carnival while it was in Louisa, then left with the carnival on its road tour. He was hired as a roustabout, more or less doing anything requested of him by Drew Shows.

While working for Drew Shows that summer, May was in his summer vacation period between his junior and senior year of high school. May testified that this was only a summer job and that he was intending to return to school in September. He also testified that if he had changed his mind about returning to high school, he could have continued working for Drew Shows past September, when school started.

On August 12, 1974, May was driving a truck for Drew Shows from Indiana to Virginia. Around the Lexington area, he got out of the truck to determine which road to take and was struck by an oncoming vehicle. May suffered head injuries and internal injuries. May was earning $85.00 per week at the time of the injury.

Generally, the average weekly wage of the claimant, at the time of the injury, is the basis upon which benefits are computed. KRS 342.140(2) provides for calculating the average weekly wage of seasonal employees and reads as follows:

In occupations which are exclusively seasonal and therefore cannot be carried on throughout the year, the average weekly wage shall be taken to be one-fiftieth (1/50) of the total wages which the employee has earned from all occupations during the twelve (12) calendar months immediately preceding the injury.

The Board found that May was not a seasonal worker; the trial court reversed this finding and held that May was a seasonal worker. Drew Shows argues that May was a seasonal worker since he was only working at a summer job and since it is common understanding that carnivals do not play in Kentucky during the winter. May states that there was no evidence presented by Drew Shows that he was only going to work during the summer or that Drew Shows' business was only carried on for a particular season of the year. Both parties cite *Department of Parks v. Kinslow*, Ky., 481 S.W.2d 686 (1972), in support of their respective contentions, as did the Board and the trial court.

*Department of Parks v. Kinslow, supra,* addressed the issue of whether Kinslow, whose job was general maintenance work and garbage pickup at Barren River State Park, was a seasonal employee within the meaning of KRS 342.140(2). Although the park was open year round, services were curtailed from October to April. Kinslow worked only from April to October and knew he was only being employed from April to October. The superintendent of the park testified that Kinslow was classified as a seasonal employee.

In *Department of Parks, supra,* at page 688, the court held that Kinslow was a seasonal employee, and stated:

A classic example of a seasonal occupation is that of fruit picking in California. . . . The very existence of the Barren River State Park depends on the patronage of tourists during the period from late spring to early fall. In the popular sense, this is seasonal. . . .

Seasonal is defined in Webster's New Collegiate Dictionary (1976) as being "1: of, relating to, or occurring at a particular season . . . 2: affected or caused by a seasonal need or availability."

■ In the instant case, the Board, in its Opinion and Award, stated that the test in determining whether an occupation is seasonal is ". . . not what the Plaintiff intended, but what the job itself was, seasonal or permanent." This, we believe, is a correct statement of the test.

■ A summer job for a student is not seasonal merely because the student is only planning to work during the summer, or in the Board's words, not what the plaintiff intended. Rather, an occupation is seasonal because of what the job itself entails.

Another example of a seasonal occupation, although not as classic as that of fruit picking, is that of a lifeguard at an outdoor pool. Since such pools are only open for swimming during the summer, a job as a lifeguard is clearly seasonal. The job will terminate in the fall, and it does not matter whether the lifeguard is a student who intends to go back to school or is someone who has no plans.

In the instant case, the Board found that May was not a seasonal worker for the reason that there was no evidence presented that May could not have continued working as a truck driver. No testimony was taken of any of the management of Drew Shows. May's testimony that he could have continued working, if he did not return to school, is uncontradicted.

Drew Shows argues that May was a seasonal worker since carnivals only play in Kentucky during the summer. In support of this contention, Drew Shows cites *Department of Parks, supra,* at 688, wherein the court stated that it would not accept the analysis that because an occupation, such as fruit picking, was being carried on somewhere in the United States, the migrant worker was not engaged in a seasonal occupation.

There is a distinction we believe should be made that refutes this contention of Drew Shows. The court in *Department of Parks, supra,* did not reach the issue of whether the same migrant worker, moving to different places in the country in order to work continuously for a year, was or was not a seasonal worker. Had May continued to work for Drew Shows, it is true that he would only have worked carnivals in Kentucky during the summer. However, had May continued to work in other parts of the country with Drew Shows for a year, we do

not believe May would be a seasonal worker simply because carnivals do not play in Kentucky during the winter.

That May could have continued working as a truck driver was uncontradicted and therefore the Board's finding that May was not a seasonal worker was supported by substantial evidence. The trial court could not substitute its judgment for that of the Board's. The finding by the trial court that May was a seasonal worker is reversed with directions to reinstate the Board's finding that May was not a seasonal worker.

The other issue raised on this appeal is whether the decision in *Apache Coal Company v. Fuller,* Ky., 541 S.W.2d 933 (1976), should be applied. May was found by the Board to have a 15% permanent partial disability as the result of a traumatic neurosis.

In the instant case, the Board rendered its Opinion and Award on September 16, 1976, and therein stated that it was increasing May's benefits from $7.01 to $28.00 per week, subject to the issuance of the mandate of the Supreme Court of Kentucky in *Apache.* The mandate issued on November 12, 1976.

This Court has stated in *Keefe v. O. K. Precision Tool and Die Co.,* Ky.App., 566 S.W.2d 804 (1978), that the decision in *Apache* shall not be applied retroactively, but shall apply only to those claims which arose prior to January 1, 1977, and had not been *finally decided* prior to November 12, 1976. (Emphasis ours). In *Keefe, supra,* the claimant was awarded pre-*Apache* benefits for his injury; no appeal was taken by any of the parties after the Board rendered its decision and the decision of the Board became final on May 9, 1976. When

*Apache* was decided, the claimant sought to reopen his award in order to obtain the substantially increased benefits allowed thereunder. This Court held that the doctrine of res judicata applied to bar the claimant from reopening the award.

In the instant case, Drew Shows appealed, within the required 20-day limit, from the Opinion and Award of the Workmen's Compensation Board. KRS 342.285. Both May and Drew Shows then appealed from the judgment of the Fayette Circuit Court. KRS 342.990. The appellate procedure has not been exhausted and the award of the Board has not yet become final nor has this case been "finally decided." We think that May is entitled to receive benefits calculated pursuant to *Apache.*

The judgment of the trial court is reversed as to the finding that May was a seasonal worker, with directions to reinstate the finding by the Board that May was not a seasonal worker, and affirmed in all other respects.

WINTERSHEIMER, J., concurs.

VANCE, J., dissents.

VANCE, Judge, dissenting.

I fully concur in the majority opinion in all aspects except that I would not give application in this case to the rules set forth in *Apache Coal Co. v. Fuller,* Ky., 541 S.W.2d 933 (1976).